ALMON, Justice.
Tyson Martin, a minor, by and through his parents and next friends, Ricky and Toni Martin, appeals from a judgment rendered on a jury verdict against him and in favor of the City of Gadsden (“the City”) and one of its officials. The questions presented are: (1) whether the City and its agents were shielded from liability pursuant to Ala. Code 1975, § 35-15-23; (2) whether the trial court erred by refusing to instruct the jury on § 35-15-24, which sets out an exception to the limitation of liability provided by § 35-15-23; and (3) whether the trial court erred by refusing to submit Tyson’s claim of wantonness to the jury.
On July 10, 1988, the Martins were celebrating Tyson’s second birthday at Nocca-lula Falls Park, which is owned and operated by the City. The Martins had reserved a pavilion at the park, and Tyson began playing barefoot in the grass with other children. That afternoon, Tyson stepped on a pile of hot charcoal briquets that had been dumped onto the ground earlier in the day. The identity of the person or persons who dumped those briquets onto the ground was never discovered. As a result of this incident, Tyson’s feet were seriously burned and he was hospitalized for treatment. Despite the significant nature of his injuries, it appears that Tyson has fully recovered.
Ricky and Toni filed a complaint against the City and two of its agents on Tyson’s behalf, alleging that the defendants had negligently or wantonly allowed a dangerous condition to exist at the park. They further alleged that the dangerous condition was the proximate cause of Tyson’s injuries. In their answer, the City and its agents contended that the park had been set aside for recreational use by the public, and that the use was noncommercial. As a result, they asserted that both the City and its agents were shielded from liability for Tyson’s injuries pursuant to § 35-15-20 et seq.
Those sections, passed by the legislature in 1975 and amended in 1981, limit the tort liability of a private or public owner of land that opens its land for recreational use by the public. That limitation on liability applies only if the use of the land is not a commercial enterprise. Owens v. Grant, 569 So.2d 707, 710 (Ala.1990); § 35-15-26. For the purposes of this statute, the term “owner” includes agents of the owner. § 35-15-21(1). An exception to the limitation on liability is contained in § 35-15-24. Under that section, a landowner that opens its land for noncommercial, public recreational use can be liable for injuries if the owner has actual knowledge that (1) the land is being used for noncommercial recreational purposes; (2) a condition, use, structure, or activity that involves an unreasonable risk of death or serious injury is present on the land; and (3) the dangerous condition, use, structure, or activity is not apparent to members of the public using the land; and if, despite that actual knowledge, the landowner chooses not to guard against injury or warn the public, in disregard of the possible consequences. Section 35-15-24(a)(l)-(4). In order for liability to be imposed under that section, it must be shown that the landowner had actual knowledge of each of the elements listed above and, with that actual knowledge, chose not to guard *798 or warn against the danger. Constructive knowledge is not sufficient. Keenum v. City of Huntsville, 575 So.2d 1075 (Ala. 1991); § 35-15-24(b).
At trial, and on appeal, Tyson has argued that this statutory limitation on liability does not apply because, he says, Noe-calula Falls Park is a commercial enterprise. He argues that because the City charges admission fees to some users of the park and because there are 13 income-generating attractions or concessions at the park, it is a commercial enterprise and therefore falls outside the protection extended by the statute. The definition of “commercial recreational use” is found at § 35-15-21(5):
“Commercial Recreational Use. Any use of land for the purpose of receiving consideration for opening such land to recreational use where such use or activity is profit-motivated,_”
(Emphasis added.) The City produced witnesses who testified that although there are charges for some of the attractions at the park, the park has consistently been operated at a significant loss and has never been envisioned as a profit-producing asset for the City.
In Owens, supra, this Court was asked to interpret the phrase “profit-motivated.” In that case, we held that the fact that entry fees were charged by the landowner did not necessarily mean that the use of the land was “profit-motivated.” 569 So.2d at 711-12. Instead of adopting a rigid definition of that phrase, this Court decided that the question of whether a landowner intends to derive a profit from the use of its land, thus making it a commercial enterprise, must be decided on a case-by-case basis and is properly within the province of the jury. Id.
In the instant case, the trial court submitted the question of whether the park was a commercial enterprise to the jury in the form of a special interrogatory, which asked: “Do you find on the date of the alleged accident as set out in the complaint that the City of Gadsden’s use of the lands in question was a commercial recreational use as the court has defined that term to you?” The court instructed the jury that if it found that the City’s use of the land was noncommercial, it must return a verdict for the defendants. No objections were made to that charge. After deliberating, the jury found that the City’s use of the land was noncommercial, and it returned a verdict for the defendants.
After reviewing the testimony offered by the City, this Court concludes that there was sufficient evidence to support the jury’s finding that the City did not intend to derive a profit from the park. Although fees were charged for certain activities within the park, it is clear that those fees only partially defrayed the cost of operating the park and that the park has never produced a profit. As a result, this Court will not disturb the jury’s finding that the City’s operation of the park was not “profit-motivated.” Owens, supra.
Alternatively, Tyson argues that if the jury’s finding regarding the noncommercial nature of the park was correct, then the trial judge erred by refusing to instruct the jury on the exception to the limitation of liability that is set out in § 35-15-24. We do not agree. There was no evidence produced that tended to show that an agent of the City had actual knowledge of the condition that caused Tyson’s injuries, i.e., the pile of hot charcoal briquets. Without evidence of that knowledge, the exception set out in § 35-15-24 did not apply. Keenum, supra. The trial court properly refused to instruct the jury on that section.
Finally, Tyson argues that the trial court erred by directing a verdict for the defendants on his wantonness claim. That claim was based on the park attendant’s alleged failure to ensure that the charcoal briquets that burned Tyson were disposed of properly-
Wantonness is the conscious doing of some act or the omission of some duty under knowledge of existing conditions with a conscious appreciation that from the doing of such act or from the omission of such duty, an injury will likely or probably result. However, the plaintiff *799 is not required to show that the defendant intended to injure him. Burns v. Moore, 494 So.2d 4 (Ala.1986); Bishop v. Poore, 475 So.2d 486 (Ala.1985); Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716 (1967); Alabama Pattern Jury Instructions: Civil, 29.00 (1974). After reviewing the evidence offered by both parties, we conclude that there was no evidence that tended to show that the park attendant had knowledge or a conscious appreciation that his omission or commission of an act was likely to place Tyson in peril. Therefore, the court properly directed a verdict on the wantonness claim.
For the reasons set out above, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.